```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

MARK SHANE OSBORN,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )    Case No. CIV-15-118-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )
```

## OPINION AND ORDER

Plaintiff Mark Shane Osborn (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 21, 1964 and was 49 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade with special education classes. Claimant has worked in the past as a circuit man doing electrical and mechanical work, inspector at a tree nursery, and laborer. Claimant alleges an inability to work beginning October 1, 2011 due to limitations resulting from mental and memory problems and back, shoulder, knee, and ankle problems.

3

**Procedural History**

On June 22, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 16, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") B. D. Crutchfield in Tulsa, Oklahoma. He issued an unfavorable decision on March 20, 2014. The Appeals Council denied review of the ALJ's decision on January 21, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with non-exertional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to perform proper evaluations at steps 2, 4, and 5; (2) failing to properly evaluate the medical and non-medical source evidence; and (3) failing to perform a proper credibility determination.

4

**Step Two, Four, and Five Evaluations**

In her decision, the ALJ found Claimant suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD"); alcohol dependence; and cannabis dependence in full, sustained remission. (Tr. 21). The ALJ determined Claimant retained the RFC to perform a full range of work at all exertional levels with the non-exertional limitations that he is limited to simple, routine tasks and only occasional contact with the public. (Tr. 22). After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of warehouse worker, kitchen helper, and production inspector, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 27). As a result, the ALJ determined Claimant was not under a disability from October 1, 2011 through the date of the decision. (Tr. 28).

Claimant first contends that the ALJ failed to include his back pain, concussion, tailbone problems, scoliosis, knee pain, ankle pain, shoulder pain, and organic brain injury as severe impairments at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any

5

such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

The ALJ specifically considered the effects of this litany of medical conditions. (Tr. 23-26). The omission of these conditions as severe impairments does not warrant the reversal of the ALJ's decision.

Claimant next asserts the ALJ should have included all of these additional conditions in the hypothetical questioning of the vocational expert and in the RFC. Claimant specifically references a perceived limitation in stooping caused by his back problems. The objective medical record does not support the inclusion of such a limitation considering that the vast majority of the medical professionals examining Claimant found him to have full range of motion and no tenderness or other indications of problems with posture or gait. (Tr. 260, 266-68, 280, 284, 288, 293, 309). Certainly nothing in the record indicates a specific limitation in stooping as Claimant suggests.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

Moreover, "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.

7

1991).  In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ.  Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990).  Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record.  Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996).  The addition of a limitation on stooping to the hypothetical questioning of the vocational expert is not supported by the record.

Claimant also contends the ALJ failed to fully develop the record with regard to Claimant's mental condition by ordering further testing for a cognitive disorder.  A social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993).  As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  This duty exists even when a claimant is represented by counsel.  Baca v. Dept. of Health & Human Services, 5 F.3d 476,

480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these conditions existed in this case to require the retention of a further consultative mental health professional in this case. Claimant's basis for contending that the ALJ should have sent Claimant for a second consultative mental evaluation was

9

the inclusion of a statement in the evaluation by Dr. Melinda Shaver on September 4, 2012 to "rule out" a cognitive disorder, NOS. (Tr. 295). The inclusion of a "rule out" in a medical record "means that the disorder is suspected, but not confirmed i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir.2008). Nothing in the regulations or case authority suggests that a "rule out" diagnosis requires the employment of a second consultative examiner or stands as a recommendation by the examiner that another examiner be appointed to rule out a condition, as Claimant suggests.

Claimant also asserts the ALJ found moderate limitations in concentration, persistence, or pace but did not include them in his hypothetical questioning of the vocational expert or in his RFC. The moderate limitations were found as a part of the paragraph B findings. Claimant appears to argue a perceived requirement that the limitations found in the paragraph B criteria must be included in the hypothetical questioning of the vocational expert. This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must

10

remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96–8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. <u>Beasley v. Colvin</u>, 520 Fed. Appx. 748, 754 (10th Cir. 2013). This Court finds no error in the omission of this limitation from the RFC or the hypothetical questioning of the vocational expert.

**Evaluation of the Medical and Non-Medical Source Evidence**

Claimant asserts the ALJ did not properly consider the notation contained in Dr. Shaver's report that "[i]t appears Mr. Osborn is unable to complete many tasks in a timely and appropriate manner, due to his cognitive problems." (Tr. 294). This notation appears in the "History of Present Illness" section of Dr. Shaver's report wherein Claimant reported the nature and extent of his condition. (Tr. 293-94). The ALJ recited the entirety of Dr. Shaver's findings, including the above statement. (Tr. 25). She also gave "great weight" to the prognosis in the opinion. (Tr. 26). The ALJ also gave "significant weight" to the opinions of the psychological consultants and "great weight" to the assessments of

11

of the physical consultants. (Tr. 26). In truth, the ALJ accepted all of the professional opinion evidence. Claimant does not indicate any conflicting medical opinion but contests the manner in which the ALJ weighed the opinion evidence. Claimant essentially argues that the ALJ should have followed a formalistic factor-by-factor assessment of the opinion evidence. While the ALJ's explanation of the weight afforded each opinion might have been clearer by utilizing the factors in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003), the fact she accepted all of the opinion evidence and afforded it substantial weight lessens the requirement that the basis for the weight provided be set out in the formalistic manner suggested by Claimant.

Claimant also challenges the ALJ's rejection of his sister's third party function report as not credible. The ALJ found the objective record did not support her statements of disability and limited activities of daily living. (Tr. 23). Claimant acknowledges that the ALJ set forth the appropriate standard for evaluating third party reports but she "did not indicate that she had applied it." This Court conceives of no other reason to set out the standard if it is not to be applied. This Court finds no error in the ALJ's assessment of the third party function statement.

**Credibility Determination**

The ALJ found Claimant was not "entirely credible." (Tr. 26). She based this conclusion on the inconsistencies between Claimant's stated restrictions and activities and the findings of the medical professionals of record. (Tr. 23-26). She also found it adversely reflected upon Claimant's credibility when Dr. Shaver suspected that Claimant was exaggerating his conditions. (Tr. 24, 293). Claimant also worked beyond the date he allegedly became disabled. (Tr. 25-26).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the

13

individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391.  However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  While the ALJ could have followed the factors listed in the regulations more thoroughly, this Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and are supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 8th day of September, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE